APR 6 2026 PM2:00
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVEN FLETCHER,

    *Plaintiff,*

v.

EQUIFAX INFORMATION
SERVICES, LLC, et al.;

NAVY FEDERAL CREDIT UNION;
and

ABSOLUTE RESOLUTIONS, et al.

    *Defendant(s)*

Case No.: 8:26-cv-981-JLB-SPF

**COMPLAINT FOR
DAMAGES,**

**INJUNCTIVE RELIEF, AND**

**DEMAND FOR JURY
TRIAL**

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Steven Fletcher, proceeding *pro se*, by and through the filing

of this Complaint, sues and seeks monetary and injunctive relief against

Defendants EQUIFAX INFORMATION SERVICES, LLC; NAVY

FEDERAL CREDIT UNION; and ABSOLUTE RESOLUTIONS, et al.

(operating under related names including ARCON / Arcon Credit Solutions

LLC / ARC / Absolute Resolutions Investments, LLC / Absolute

Resolutions Corporation (ARC)), for their alleged negligent and willful

violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et

seq., Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72 et seq., Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq., Florida Telephone Solicitation Act (FTSA), Fla. Stat. § 501.059 et seq., the National Do Not Call Registry protections (DNC), 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) et seq., and related state tort laws including invasion of Privacy and Nuisance..

## I. NATURE OF THE ACTION

1. This civil action seeks to remedy the Defendants' systemic failure to follow reasonable procedures in the reporting, reinvestigation, and collection of consumer data. Furthermore, this is a civil action seeking actual, statutory, and punitive damages, along with permanent injunctive relief, for Defendants' willful and negligent failures to comply with their duties under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq., Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"), the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.72 et seq., the National Do Not Call Registry protections (DNC), 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) et seq., and related Florida Common-Law torts (including Slander of Credit and Intrusion upon Seclusion) including Invasion of Privacy and Nuisance. Plaintiff seeks damages and injunctive relief for the harm caused by Defendants' failure to follow reasonable procedures, failure to investigate disputed information, reporting inaccurate and disputed information to third parties, obtaining and using Plaintiff's

consumer report without permissible purpose, and abusive and unlawful collection practices.

2. The gravity of Equifax's systemic failures is confirmed at the highest regulatory level. On January 17, 2025 — the same period in which Plaintiff suffered the credit denial forming the core of this complaint — the Consumer Financial Protection Bureau ("CFPB") issued a formal Consent Order against Equifax, Inc. and Equifax Information Services LLC (CFPB File No. 2025-CFPB-0002), imposing a $15 million civil penalty and finding that Equifax violated the FCRA by: (i) failing to properly conduct reinvestigations of disputed information in consumer files; (ii) failing to prevent the improper reinsertion of previously deleted information; (iii) failing to provide adequate written notice to consumers of reinvestigation results; (iv) using automated reinvestigations with little to no manual review; (v) ignoring consumer-submitted documentation entirely; and (vi) failing to follow reasonable procedures to assure maximum possible accuracy. Critically, the CFPB found that Equifax sent contradictory letters to consumers — simultaneously stating information was "verified as accurate" and "has been deleted" — the precise conduct Plaintiff experienced. This federal enforcement action, issued contemporaneously with the violations in

this case, is direct and irrefutable evidence that Equifax's failures against Plaintiff were not isolated incidents but part of a known, systemic, willful pattern of regulatory noncompliance. Under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), this documented regulatory history establishes that Equifax acted with reckless disregard of its statutory obligations, satisfying the willfulness standard for maximum punitive damages under 15 U.S.C. § 1681n.

3. The core of this complaint rests on the nexus between Defendant Equifax's maintenance of contradictory internal databases and the subsequent denial of a $50,000 line of credit. Followed by the failure and violations of Defendant Navy Federal Credit Union who failed to follow reasonable procedures. Along with Defendant Absolute Resolutions who also failed to follow reasonable procedures and in addition performed unlawful practices with lack of permissible purpose.

4. Specifically, Defendant Equifax failed to follow reasonable procedures to ensure the maximum possible accuracy of Plaintiff's credit file and failed to conduct a reasonable reinvestigation after Plaintiff clearly disputed inaccurate and incomplete information.

5. Defendant Navy Federal Credit Union (or its agent/assignee, the Debt Collector) failed to conduct a reasonable investigation into the disputed accounts after receiving notice from the Consumer Reporting Agencies (CRAs), leading to the continued reporting of known inaccurate information.

6. Defendant Absolute Resolutions (Third Party Debt Collector) acquired private and sensitive information belonging to the Plaintiff without permissible purpose and intentionally used the obtained data to harm the plaintiff through unlawful harassment, intimidation, exploitation, manipulation, deceptive practices, misinformation, and fear provoking methods.

7. As a direct result of Defendants' systemic failures and misconduct, Plaintiff was denied a critical $50,000 line of credit, suffered substantial financial loss from a missed investment opportunity, and sustained severe emotional and physical distress.

## II. JURISDICTION AND VENUE

8. .**Subject Matter Jurisdiction**. This Court has federal question subject matter jurisdiction over Plaintiffs federal claims pursuant to 28 U.S.C. § 1331 because this case arises under federal statutes including the FCRA (15 U.S.C. § 1681 et seq.), the FDCPA (15 U.S.C. § 1692 et seq.), the TCPA (47 U.S.C. § 227 et seq.) and the DNC (. It also has jurisdiction under 15 U.S.C. § 1681p concerning enforcement of consumer rights against consumer reporting agencies and users of consumer reports.

9. **Supplemental Jurisdiction.** This Court has Supplemental Jurisdiction over the related Florida state-law claims (FCCPA), Florida Telephone Solicitation Act, Fla. Stat. § 501.059 (FTSA) pursuant to **28 U.S.C. § 1367**, because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution., Florida tort claims including Slander of Credit, Intrusion upon Seclusion, and Gross Negligence) pursuant to 28 U.S.C. § 1367, as these claims arise from a common nucleus of operative facts with the federal claims.

10. **Personal Jurisdiction:** This Court has personal jurisdiction over all Defendants because they conduct substantial business within the State of Florida, maintain minimum contacts with this forum, and the tortious acts complained of—including the transmission of unauthorized telephonic solicitations and the reporting of inaccurate credit data—occurred while Plaintiff was located within this District.

11. **Venue.** Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in **Polk County**, where Plaintiff resides, received the unauthorized communications, and suffered the resulting credit and emotional damages.

12. The TCPA forms an **independent federal question** because Defendants used an automated telephone dialing system (ATDS), artificial/prerecorded messages, and other electronic means to contact Plaintiff in violation of 47 U.S.C. § 227 and after receiving Plaintiff's Cease and Desist notice, thereby establishing federal question jurisdiction.

## III. PARTIES

13. Plaintiff, Steven Fletcher, is a natural person and an adult individual who at all relevant times, was a resident of Polk County, Florida at 505 Walnut St., Auburndale, FL 33823; and a "consumer" as defined by 15 U.S.C. § 1681a(c).

14. Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), is a Consumer Reporting Agency ("CRA") as defined by 15 U.S.C. § 1681a(f), that regularly transacts business in the State of Florida and in this District and is subject to the provisions of the FCRA. Equifax's principal place of business and corporate headquarters is located at 1550 Peachtree Street NW, Atlanta, Fulton County, Georgia 30309. Equifax may be served with process through its Florida registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Leon County, Florida 32301, or at its principal corporate address at 1550 Peachtree Street NW, Atlanta, Fulton County, Georgia 30309.

15. Defendant, NAVY FEDERAL CREDIT UNION ("Navy Federal"), is a Furnishing party to the "CRAs" (Credit Reporting Agencies), and is a

"furnisher" as defined under 15 U.S.C. § 1681s-2, and a "person" within the meaning of 15 U.S.C. § 1681a(b), who regularly transacts business in the State of Florida and in this District. Navy Federal Credit Union is a federally chartered credit union with its corporate headquarters and principal legal service address at 820 Follin Lane SE, Vienna, Fairfax County, Virginia 22180, where it accepts service of process. In addition to this principal address they may also be served with process through its Virginia registered agent, Corporation Service Company, located at 100 Shockoe Slip Fl 2, Richmond, "Richmond City", Virginia, 23219; an independent city and not located within a specific county. It serves as a registered agent office for GCS Global.

16. Defendant, ABSOLUTE RESOLUTIONS, et al. (and its related operational names/aliases ARCON / Arcon Credit Solutions LLC / ARC / Absolute Resolutions Investments, LLC / Absolute Resolutions Corporation (ARC)), is a third-party debt collector (assignee) and furnisher that regularly engages in collection activity in Florida and to CRAs, as defined by 15 U.S.C. § 1681s-2, and is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and a furnisher under the FCRA, and regularly transacts business in the State of Florida and in this District. Absolute Resolutions' principal

business office is located at 8000 Norman Center Drive, Suite 350, Bloomington, Hennepin County, Minnesota 55437. Absolute Resolutions Investments, LLC and Absolute Resolutions Corporation (ARC) have registered with the Florida Division of Corporations and may be served with process through their Florida registered agent, URS Agents, LLC, located at 3458 Lakeshore Drive, Tallahassee, Leon County, Florida 32312.

## BACKGROUND: THE FCRA

17. The FCRA was enacted by Congress to promote the accuracy and fairness of credit reporting and that:

a. The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence which is essential to the continued functioning of the banking system.

b. An elaborate mechanism has been developed for investigating and evaluating the creditworthiness, credit standing, credit capacity, character, and general reputation of consumers.

c. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

d. There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C § 1681.

e. The systemic nature of Equifax's failures is confirmed by the CFPB's January 17, 2025 Consent Order (File No. 2025-CFPB-0002), which found that Equifax violated the FCRA on an institutional scale — processing 765,000 disputes per month through automated systems with little to no manual review, ignoring consumer-submitted documentation, allowing previously deleted inaccurate information to be reinserted into consumer files, and sending consumers contradictory reinvestigation notices. The CFPB ordered Equifax to pay a $15 million civil penalty and bring its entire dispute resolution infrastructure into compliance with the FCRA. Plaintiff's case is a direct, individual-level manifestation of this institutionally documented pattern of FCRA noncompliance.

# IV. FACTUAL ALLEGATIONS (THE NARRATIVE OF HARM)

## A. The Adverse Action and Quantifiable Damages

18. In or about February 2025 - March 2025, Plaintiff applied for a $50,000 line of credit with MidFlorida Credit Union for a time-sensitive real estate investment opportunity.

19. As a direct and proximate result of Equifax's failure to follow reasonable procedures, Plaintiff was denied this credit, a true and correct copy of which his **Adverse Action Letter** is attached hereto as **Exhibit 1**.

20. The denial resulted in a Lost Opportunity Cost. While the exact appreciation of the intended investment is a matter of market fluctuation, the unavailability of $50,000 in capital during a period of high inflation and rising property values constitutes a concrete and measurable economic injury with a "velocity of money" value — meaning the loss prevented Plaintiff from generating further profit and compounding investment returns.

21. Furthermore, the stress of the denial and the Defendants' subsequent refusal to correct the inaccurate reporting caused Plaintiff to suffer physical and emotional harm, including chronic (exacerbated) back pains, migraines, banding headaches, emotional and psychological harm, anxiety, panic attacks, physical manifestation of distress, negatively impacting mood changes, loss of time, wasted time, compounded living hardship, credit reputation damage, privacy and nuisance harms, loss opportunity cost, loss of sleep and damaged relationships for which Plaintiff seeks actual damages under 15 U.S.C. § 1681o. These documented physical manifestations of emotional distress constitute non-economic compensatory damages independent of and in addition to the economic loss.

22. Including additional damages caused by the Defendants Navy Federal Credit Union who failed to follow reasonable procedures.

23. Along with the Defendant Absolute Resolutions (Third Party Debt Collector) who failed to follow reasonable procedures and also committed illegal practices with a lack of permissible purpose.

## B. The Discovery and Initial Dispute

24. Upon receiving the denial, on or around August 16, 2025, the Plaintiff diligently embarked on a Pro Se legal investigation and study into the FCRA and credit repair procedures where the Plaintiff requested and acquired his **Consumer Credit Report**, true and correct copy of which is attached hereto as **Exhibit 2**." From this time up until the date of or around September 15, 2025, Plaintiff documented a screenshot of their severely impacted and **Damaged Credit Score**, realizing that the conditions of their overall Consumer Credit Reputation wasn't improving, a true and correct copy of which is attached hereto as **Exhibit 3**. Despite significant health and personal hardships suffering from a severe back injury, chronic pain, insomnia, and emotional stress. One factor being the plaintiff having to endure a termite infestation in their residence with no funds to move due to $50,000 credit denial.

25. The severe emotional distress, anxiety, and sleep deprivation caused by the Defendants' inaccurate reporting were compounded by the extensive self-study required to address the errors, which ultimately damaged personal relationships and exacerbated physical ailments.

26. Around September 18, 2025, the Plaintiff sent formal **certified mail disputes to the three major CRAs**, including Equifax, clearly identifying the inaccuracies and incompleteness of multiple tradelines, thereby triggering the Defendants' statutory reinvestigation duties under 15 U.S.C. § 1681i(a), a true and correct copy of which is attached hereto as **Exhibit 4**. On or around September 23, 2025 - September 25, 2025, Plaintiff acquired **Green Return Receipts** providing evidence that the Plaintiff sent certified mail disputes to the three major CRAs, a true and correct copy of which is attached hereto as **Exhibit 5**.

## C. Defendants' Procedural Failures and Willful Noncompliance (The Nexus of Harm)

27. Equifax's Failure to Follow Reasonable Procedures (15 U.S.C. §§ 1681e(b) & 1681i): The epicenter of Equifax's liability is its systemic Failure to Follow Reasonable Procedures. Upon completion of their reinvestigation, Equifax failed to comply with the FCRA by:

a. Failing to send the Plaintiff a written confirmation of the completion of the reinvestigation within the federally required five (5) days (a violation of 15 U.S.C. § 1681i(a)(6));

b. Failing to properly update the status date to reflect new information, thereby misleading third-party users about the information's recency; and

c. Most critically, failing to follow reasonable procedures to assure maximum possible accuracy as required by 15 U.S.C. § 1681e(b), as evidenced by maintaining contradictory credit files across different platforms — the precise conduct the **CFPB identified in its January 17, 2025 Consent Order (File No. 2025-CFPB-0002)** as a systemic institutional failure, a true and correct copy of which is attached hereto as **Composite Exhibit 6/A**. In addition to this On or around September 24, 2025, Plaintiff received mailed letters from the Defendant Equifax, informing him of **Unauthorized Disputes** submitted through Plaintiff's Consumer Credit Reporting account, a true and correct copy of which is attached hereto as **Composite Exhibit 6/B**.

28. Contradictory Files and Obstruction of Dispute Rights: Ultimately all three CRAs deleted the disputed accounts. However, Equifax demonstrated a clear and willful failure to follow reasonable procedures. On or around October 17, 2025 - October 20, 2025, Plaintiff documented and compiled evidence of these **Contradictory Files and Obstruction of Plaintiff's Dispute Rights**, true and correct copies of which is attached hereto as **Composite Exhibit 7/A-7E.**

a. Contradictory Files: Equifax deleted the accounts from the official credit report provided via AnnualCreditReport.com (an admission of inaccuracy/incompleteness), yet recklessly maintained and continued to display these same deleted, inaccurate accounts on its proprietary consumer-facing website and internal database, in direct violation of 15 U.S.C. § 1681e(b). The Eleventh Circuit established in Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991) — binding authority in this Court — that a CRA maintaining internally contradictory records directly violates § 1681e(b)'s reasonable procedures requirement. The CFPB's January 2025 Consent Order specifically found this same conduct constitutes a violation of the FCRA, providing direct regulatory confirmation of liability.

b. Obstruction of Dispute: When Plaintiff attempted to file a second dispute concerning the lingering inaccuracies on Equifax's primary platform, the online dispute option was intentionally removed or made unavailable, thereby actively blocking Plaintiff from exercising the legal right to dispute under 15 U.S.C. § 1681i. Notably, the CFPB's January 2025 Consent Order found that Equifax's online dispute submission portal was deliberately limited to prevent consumers from fully and accurately describing their disputes — a finding directly applicable to this obstruction.

29. Direct Causation of Harm: This failure directly caused the nexus of harm: when MidFlorida Credit Union pulled the Plaintiff's credit in February 2025, Equifax published the internal "proprietary" inaccurate data, leading to the denial of the $50,000 credit line. This denial resulted in the loss of an investment opportunity, constituting concrete and particularized injury. The U.S. Supreme Court has clarified the threshold for Article III standing, stating that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Judicial precedent in this Circuit confirms that the unauthorized disclosure of private consumer information and the resulting interference

with privacy rights are sufficient to confer Article III standing in federal court. The Eleventh Circuit held that a credit reporting agency's failure to follow reasonable procedures bears a close relationship to the longstanding tort of defamation and confers standing on the consumer without requiring proof of a credit score drop. *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017) — binding authority directly applicable to this Court.

30. Navy Federal Credit Union's and Absolute Resolutions' Failure to Follow Reasonable Procedures (15 U.S.C. § 1681s-2(b)): Despite receiving the dispute notice from Equifax via e-OSCAR, Defendants Navy Federal Credit Union and Absolute Resolutions failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b), and instead the Defendants relied on automated or conclusory "verification" without reviewing the account-level documentation provided in Plaintiff's certified dispute, proceeding to "verify" information which they knew or should have known was inaccurate. The Eleventh Circuit held in Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008) — binding authority — that a furnisher's investigation must be a genuine and substantive inquiry, not a mere re-verification of the original data. Furthermore, in Losch v. Nationstar Mortgage LLC, 995 F.3d 937, 944 (11th Cir. 2021), the Eleventh Circuit reaffirmed that the duty of

furnishers under § 1681s-2(b) is triggered upon receipt of notice from a CRA and requires a genuine, documented investigation. For persuasive guidance, Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004) held that a furnisher must conduct a reasonable investigation that goes beyond merely reviewing its own records.

31. Re-insertion of Deleted Information: As a result of this unreasonable e-OSCAR reinvestigation and Equifax's maintenance of contradictory files, Equifax later "updated" the Plaintiff's consumer credit report to reflect the same exact harmful, misleading, and inaccurate information it had previously confirmed was subject to deletion; Again contradictory. This re-insertion without proper notification violates 15 U.S.C. § 1681i(a)(5). Critically, the CFPB's January 17, 2025 Consent Order (File No. 2025-CFPB-0002) specifically found that "Equifax did not have systems to detect information that was previously removed and block that information from again appearing on the consumer's credit report" — a finding that directly and conclusively establishes Equifax's institutional failure to prevent the precise re-insertion harm Plaintiff suffered.

32. Willful Noncompliance: This ongoing, systemic failure to correct a known error, coupled with the active obstruction of the dispute process, demonstrates that the Defendants acted with an unjustifiably high risk of inaccuracy, constituting Willful Noncompliance with the FCRA. Under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), willfulness includes reckless disregard of statutory obligations. The CFPB's January 2025 Consent Order, imposing a $15 million civil penalty against Equifax for the same categories of conduct alleged here, removes any doubt that Equifax's failures were known, systemic, and willful — not inadvertent clerical errors. The Eleventh Circuit has explicitly held that the dissemination of inaccurate information to a third party is not a prerequisite for recovering damages under the FCRA, stating that "a consumer's credit report need not be published to a third party in order to entitle the consumer to actual damages." Collins v. Experian Info. Sols., Inc., 775 F.3d 1330, 1335 (11th Cir. 2015).

33. Around September 30, 2025, Plaintiff received notice from Navy Federal Credit Union informing him that **(3) alleged debts** had been **sold** to a third party debt collection company (Absolute Resolutions) effective September 16, 2025, a true and correct copy of which is attached hereto as **Exhibit 8.**

34. Around October 7, 2025, Plaintiff received **(2) separate debt collection letters** from Absolute Resolutions (operating under Arcon Credit Solutions LLC and other related names) attempting to collect debt for multiple alleged accounts, a true and correct copy of which is attached hereto as **Exhibit 9.** Around October 10, 2025, Plaintiff received a **Re-investigation Letter** from Equifax stating that the **CRA (Denied Plaintiff's Dispute)** and Accused Plaintiff of Filing a Frivolous Dispute. Inside This letter Equifax also admitted to Deleting all accounts that were disputed as of or around Oct 10, 2025, a true and correct copy of which is attached hereto as **Exhibit 10.**

35. *Absolute Resolutions' Lack of Permissible Purpose (15 U.S.C. § 1681b):* Around November 12, 2025, **Plaintiff sent a Cease and Desist letter** and debt validation demand to Absolute Resolutions (operating as Arcon Credit Solutions LLC). This action was decided by Plaintiff under duress, after egregious harassment and the Defendant intentionally and strategically insinuating threats of harmful consequences against Plaintiff, a true and correct copy of which is attached hereto as **Composite Exhibit 11/A.** Under 15 U.S.C. § 1692g(b), this demand (Cease and Desist Letter) **federally barred Absolute Resolutions from further collection activity** and

eliminated any permissible purpose for further access to Plaintiff's consumer information under 15 U.S.C. § 1681b(a)(3)(A) until provided with verification of the debt. Having failed to validate the debt with any account-level documentation (as detailed in Count X, infra), Absolute Resolutions lacked the requisite 'intent to use the information in connection with... review or collection of an account' required by 15 U.S.C. § 1681b(a)(3)(A). Therefore, any subsequent access to Plaintiff's consumer report **violated the FCRA's permissible purpose requirement**.

36. *Absolute Resolutions' Failure to Comply with Debt Validation (15 U.S.C. § 1692g(b)) and Continued Lack of Permissible Purpose:* Around November 26, 2025, Absolute Resolutions (operating as ARC / Absolute Resolutions Corporation) **responded to Plaintiff's Cease and Desist Letter along with the Plaintiff's Debt Validation Letter**. The response letter stated that their credit reporting was accurate, a true and correct copy of which is attached hereto as **Composite Exhibit 11/B**. Yet, the letter provided absolutely none of the legally required validation documents that Plaintiff requested — no original creditor (ink signatured) agreement, no 'account binded' bill of sales documents, and no unbroken chain of custody/title documentation proving

Absolute Resolutions ever had legal **permissible purpose** (legal authority) to collect the alleged debt.

37. *Absolute Resolutions' Failure to Comply with Debt Validation (15 U.S.C. § 1692g(b)) and Continued Lack of Permissible Purpose:* Around December 10, 2025 - around December 15, 2025, the third party debt collector (Absolute Resolutions) operated under the name ((ARC) Absolute Resolutions Corporation) to provide a **follow up response to Plaintiff's Debt Validation Letter** via USPS, a true and correct copy of which is attached hereto as **Exhibit 12**. In this (40 page) package, the Defendant once again completely **failed to follow reasonable procedures** and provide legally required validation of debt. As a result, Defendant's failure to comply with debt validation requirements under 15 U.S.C. § 1692g(b) is an independent federal violation and, as explained in Count X, infra, **eliminates any permissible purpose** for accessing Plaintiff's consumer report under 15 U.S.C. § 1681b(a)(3)(A). **A debt collector cannot claim a legitimate 'intent' to collect an account when it cannot prove the account exists or that it has legal authority to collect it.** Furthermore, the Eleventh Circuit has unequivocally held that the continued reporting of inaccurate information itself constitutes a cognizable legal injury, stating that "the false

reporting itself [i]s the injury" and that "repeatedly report[ing] a non-existent delinquent . . . debt on [the plaintiff's] credit report to third parties" is a concrete Article III injury. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943–44 (11th Cir. 2021) — binding authority directly applicable to this Court.

38. Also, around December 26, 2025, Plaintiff documented and compiled evidence of Equifax performing a "**Re-Aging of Accounts" on Plaintiff's consumer credit reports**, a true and correct copy of which is attached hereto as **Exhibit 13**. The Eleventh Circuit has made clear that a consumer need not demonstrate that inaccurate credit reporting caused a measurable drop in their credit score or a specific denial of credit in order to establish a compensable injury, holding that "the false reporting itself [i]s the injury." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) — binding authority directly applicable to this Court. The re-aging of Plaintiff's accounts therefore constitutes an independent, continuing injury separate from and in addition to the original inaccurate reporting.

39. **TCPA Violations and Continued Harassment After Cease and Desist (47 U.S.C. § 227):** From around October 08, 2025 up until around March 09,

2026 the defendant Absolute Resolutions has willfully neglected and egregiously violated the Plaintiffs Cease and Desist letter, while operating as another name (ARCON) and have harassed the Plaintiff via phone and text, illegally attempting to collect debt from the Plaintiff through unlawful methods, a true and correct copy of which is attached hereto as **Composite Exhibit 14/A-14/B**. Considered a "double violation" when the violation of the plaintiffs cease and desist letter gets paired with the (TCPA) Telephone Consumer Protection Act. Plaintiff is also on the **'Do Not Call List' (DNC)** adding another violation, a true and correct copy of which is attached hereto as **Composite Exhibit 14/C.**. Under Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012), federal district courts have subject-matter jurisdiction over TCPA claims. Under Drazen v. Pinto, 74 F.4th 1336, 1342 (11th Cir. 2023) — binding Eleventh Circuit authority — each unauthorized call after express revocation of consent constitutes a separate violation entitling Plaintiff to $1,500 in treble statutory damages per call.

40. Deceptive Practices and Missing Credit Reports. The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., and Regulation V (12 CFR Part 1022) govern deceptive practices and missing information. Key provisions include § 623 (15 U.S.C. § 1681s-2) on furnisher duties regarding

accuracy/completeness, and § 607(b)(§ 1681e(b)) requiring consumer reporting agencies (CRAs) to maintain reasonable procedures to ensure maximum accuracy. On or around March 02, 2026, Plaintiff documented and compiled evidence of **Deceptive Practices and Missing Credit Reports,** true and correct copy of which is attached hereto as **Exhibit 15**. To Perform further detailed observation, Plaintiff acquired a 2nd more updated and revealing copy of their **Final Equifax Credit Report** in addition, on or around March 02, 2026, true and correct copy of which is attached hereto as **Exhibit 16**.

# V. CLAIMS FOR RELIEF

# COUNT I: FCRA – NEGLIGENT AND WILLFUL NONCOMPLIANCE BY CRA

## (15 U.S.C. §§ 1681e(b) & 1681i) (EQUIFAX)

41. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

42. Failure to Follow Reasonable Procedures (15 U.S.C. § 1681e(b)): Equifax violated its duty under 15 U.S.C. § 1681e(b) by negligently and willfully failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in Plaintiff's credit report, as evidenced by the immediate deletion of the account from one platform (AnnualCreditReport.com) while maintaining it on another (proprietary site). The Eleventh Circuit established in Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991) — binding authority directly applicable to this Court — that a CRA maintaining internally contradictory records directly violates § 1681e(b)'s reasonable procedures requirement. The CFPB's January 17, 2025 Consent Order (File No. 2025-CFPB-0002)

provides direct federal regulatory confirmation of this identical violation pattern.

43. Failure to Conduct Reasonable Reinvestigation (15 U.S.C. § 1681i(a)): Equifax violated its duty under 15 U.S.C. § 1681i(a) by negligently and willfully failing to conduct a reasonable reinvestigation, failing to assess the sufficiency of the Furnishers' documentation, and failing to correct the entire file after its own internal finding of inaccuracy. The Eleventh Circuit held in Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008) that a reinvestigation must be a genuine and substantive inquiry, not a mere re-verification of original data. The CFPB found that Equifax's reinvestigations were "frequently automated, with little to no manual review" and ignored consumer-submitted documentation — the exact deficiency Plaintiff experienced.

44. Failure to Provide Reinvestigation Notice (15 U.S.C. § 1681i(a)(6)): Equifax further violated 15 U.S.C. § 1681i(a)(6) by failing to provide the Plaintiff with the written notice and report of the results of the reinvestigation within the required timeframe. The CFPB specifically found that from early 2022 to mid-2023, Equifax sent letters to 250,000 consumers falsely stating

reinvestigations were "still in process" when they had already concluded, and regularly sent consumers contradictory letters about dispute outcomes — an institutionalized violation of § 1681i(a)(6).

45. Willful Conduct: Equifax's conduct was willful and carried out in reckless disregard for the Plaintiff's rights. Under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), willfulness includes knowing or reckless disregard of statutory duties. The CFPB's $15 million enforcement action confirms that Equifax's failures were not isolated mistakes but a systemic, institutionalized pattern of FCRA noncompliance — establishing willfulness as a matter of regulatory record. The Eleventh Circuit has explicitly held that the dissemination of inaccurate information to a third party is not a prerequisite for recovering damages under the FCRA, stating that "a consumer's credit report need not be published to a third party in order to entitle the consumer to actual damages." Collins v. Experian Info. Sols., Inc., 775 F.3d 1330, 1335 (11th Cir. 2015).

46. Causation and Damages: The maintenance of two contradictory credit files and the subsequent re-insertion of deleted data are the direct cause of the Plaintiff's injury, resulting in the denial of credit and compounded emotional

distress. Under Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016), this constitutes concrete injury sufficient for Article III standing.

47. Assessment of Damages: As a direct result of Equifax's negligent and willful noncompliance, the Plaintiff suffered the following actual/compensatory damages: (i) denial of a $50,000.00 loan resulting in lost investment opportunity and opportunity costs (economic damages); (ii) compounding physical distress including chronic back pain, migraines, chest aches, and banding headaches (non-economic damages); (iii) severe emotional distress including anxiety, panic attacks, loss of sleep (insomnia), irritable mood changes, and fear of being penalized (non-economic damages); (iv) damage to personal relationships; and (v) loss of time invested in correcting Defendants' errors. Therefore, the Plaintiff is entitled to actual/compensatory, statutory (ranging from $100 to $1,000 per violation under 15 U.S.C. § 1681n), and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

# COUNT II: FCRA – NEGLIGENT AND WILLFUL FAILURE TO INVESTIGATE

## (15 U.S.C. § 1681s-2(b)(1)(A)) (Against Furnishers)

48. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

49. Furnisher's Duty to Investigate: Defendants Navy Federal and Absolute Resolutions violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation into the disputed accounts.

50. Triggering of Investigation Duty: Upon receiving notice of the dispute from Equifax via the e-OSCAR system, Defendants Navy Federal Credit Union and Absolute Resolutions became obligated under 15 U.S.C. § 1681s-2(b)(1)(A) to conduct an investigation with respect to the disputed information.

51. Failure to Follow Reasonable Procedures: These Defendants negligently and willfully failed to follow reasonable procedures and conduct a thorough and reasonable investigation. The Eleventh Circuit held in Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008) — binding authority — that a

furnisher's investigation must be a genuine and substantive inquiry. The Eleventh Circuit reaffirmed in Losch v. Nationstar Mortgage LLC, 995 F.3d 937, 944 (11th Cir. 2021) that the duty under § 1681s-2(b) requires a genuine, documented investigation. For additional persuasive support, Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004) held that a furnisher must consider all consumer-provided dispute information.

52. Causation and Injury: As a direct result of this failure, Plaintiff suffered injury in fact, including mental and emotional distress, and damage to credit reputation.

53. Assessment of Damages — Credit Denial: The deficient investigation provided creditors with an inaccurate basis for assessing Plaintiff's risk, directly resulting in the denial of the $50,000 line of credit. The U.S. Supreme Court has clarified the threshold for Article III standing, stating that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

54. Willful or Negligent Conduct: The Furnisher's conduct was negligent and/or willful.

55. Damages Sought: Plaintiff is entitled to actual/compensatory damages, statutory damages ($100 to $1,000 per violation if willful under 15 U.S.C. § 1681n), punitive damages (if willful), and litigation costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

56. Alternatively, Plaintiff is entitled to actual damages and litigation costs if negligent, pursuant to 15 U.S.C. § 1681o.

## COUNT III: FCRA – NEGLIGENT AND WILLFUL FAILURE TO REVIEW RELEVANT INFORMATION

(15 U.S.C. § 1681s-2(b)(1)(B)) (Against Furnishers)

57. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

58. Provision of Relevant Information: The Plaintiff's certified mail dispute provided the CRAs and, by extension, the Furnishers, with clear, relevant information as to the incompleteness and inaccuracy of the tradelines.

59. Failure to Review: Defendants Navy Federal Credit Union and Absolute Resolutions negligently and willfully violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information forwarded to them by the consumer reporting agencies. The Eleventh Circuit held in Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016) — binding authority directly applicable to this Court — that a furnisher's investigation is only reasonable if it includes a review of all relevant information forwarded by the CRA, including consumer-submitted documentation, and that failure to review such information renders the investigation per se inadequate. For additional persuasive authority, Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) held that the FCRA's reinvestigation requirement demands careful evaluation of all consumer-provided documentation to ensure maximum possible accuracy.

60. Assessment of Damages — Perpetuation of Inaccuracy: This failure perpetuated the inaccuracy on Plaintiff's credit report, causing continuous emotional distress, reputational harm, and ongoing credit score suppression.

61. Causation: Furnishers caused injury in fact including mental and emotional distress, damage to credit reputation, and lost credit opportunities.

62. Damages Sought: Plaintiff is entitled to recover actual/compensatory damages, statutory damages, punitive damages (if willful), and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

63. Alternatively, Plaintiff is entitled to actual damages and costs if the violation is negligent, pursuant to 15 U.S.C. § 1681o.

## COUNT IV: FCRA – NEGLIGENT AND WILLFUL FAILURE TO REPORT ACCURATE INFORMATION

(15 U.S.C. § 1681s-2(b)(1)(C)) (Against Furnishers)

64. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

65. Failure to Report Investigation Results: As a result of their inadequate investigation, Defendants Navy Federal Credit Union and Absolute Resolutions negligently and willfully violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report the accurate results of the investigation to all other Consumer Reporting Agencies to which they furnish information, thereby spreading the inaccurate information across the entire credit reporting

ecosystem. In this Circuit, the continued furnishing of inaccurate information to consumer reporting agencies constitutes a concrete and cognizable injury in fact, as the Eleventh Circuit has confirmed that "the false reporting itself [i]s the injury" and that "repeatedly report[ing] a non-existent delinquent . . . debt on [the plaintiff's] credit report to third parties" satisfies the Article III injury-in-fact requirement without further proof. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943–44 (11th Cir. 2021). Each transmission of inaccurate information by Defendants Navy Federal Credit Union and Absolute Resolutions to a consumer reporting agency constitutes a separate publication of false information and an independent injury to Plaintiff.

66. Assessment of Damages — Systemic Proliferation of Harm: This failure caused the inaccurate information to proliferate across the credit reporting system, perpetually multiplying the harm by ensuring that derogatory data was visible to every potential lender. Each instance of reporting to different CRAs constitutes a separate publication of false information, compounding the reputational and financial injury to Plaintiff.

67. Causation: Furnisher caused injury in fact including mental and emotional distress, damage to credit reputation across multiple CRAs, and denial of credit from multiple potential creditors.

68. Willful or Negligent Conduct: Furnisher's conduct was negligent and/or willful.

69. Damages Sought: Plaintiff is entitled to recover actual/compensatory damages, statutory damages, punitive damages (if willful), and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

70. Alternatively, Plaintiff is entitled to actual damages and costs if the violation is negligent, pursuant to 15 U.S.C. § 1681o.

# COUNT V: FCRA – NEGLIGENT AND WILLFUL FAILURE TO REPORT

## DISPUTE STATUS

### (15 U.S.C. § 1681s-2(b)(1)(D)) (Against Furnishers)

71. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

72. Failure to Report Dispute Status: Defendants Navy Federal Credit Union and Absolute Resolutions negligently and willfully violated 15 U.S.C. § 1681s-2(b)(1)(D) by failing to report that the item of information is disputed by the consumer to TransUnion, Equifax, Experian, and other consumer reporting agencies, which is materially misleading to third-party creditors and an independent source of harm.

73. Defendants ultimately failed to report that the item of information is disputed by the consumer, as required by 15 U.S.C. § 1681s-2(b)(1)(D).

74. Assessment of Damages — Misleading Third-Party Creditors: The omission of the "Disputed by Consumer" status code provided third-party creditors with an artificially clean and certain data point, directly contributing to the credit denial by removing a red flag that should have been present. The

Eleventh Circuit held in Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313 (11th Cir. 2018) — binding authority directly applicable to this Court — that a furnisher's failure to note a consumer's dispute on a credit report constitutes an independent FCRA violation because it creates a materially misleading impression for prospective creditors evaluating the consumer's creditworthiness.

75. Causation: Furnishers caused injury in fact including mental and emotional distress, damage to credit reputation, materially misleading potential creditors, and resulting in quantifiable credit damages including denial of the $50,000 credit line.

76. Willful or Negligent Conduct: Furnisher's conduct was negligent and/or willful.

77. Damages Sought: Plaintiff is entitled to recover actual/compensatory damages, statutory damages, punitive damages (if willful), and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

78. Alternatively, Plaintiff is entitled to recover actual damages and costs if the violation is negligent, pursuant to 15 U.S.C. § 1681o.

## COUNT VI: FCRA – NEGLIGENT AND WILLFUL FAILURE TO MODIFY OR DELETE

(15 U.S.C. § 1681s-2(b)(1)(E)) (Against Furnishers)

79. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

80. Finding of Inaccuracy or Inability to Verify: Upon the conclusion of the inadequate reinvestigation, the disputed information was either found to be inaccurate, incomplete, or could not be verified due to the Furnishers' lack of documentation.

81. Failure to Modify, Delete, or Block: Defendants Navy Federal Credit Union and Absolute Resolutions negligently and willfully violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the reporting of that item of information when it could not be verified. As the Eleventh Circuit held in Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016), failure to review consumer-submitted

documentation renders an investigation per se inadequate — and where a debt cannot be verified, the furnisher's only lawful options are to modify, delete, or permanently block the reporting of that item.

82. Assessment of Damages — Accumulating Financial Harm: This specific failure is the direct and proximate cause of the accumulating financial damages described in the Factual Allegations, as the continued presence of the unsubstantiated collection account on the credit file demonstrably lowered the Plaintiff's credit score, preventing access to credit at favorable rates and causing the specific loss detailed herein. Each day the unverified information remained on Plaintiff's credit report constituted continuing harm and reputational damage.

83. Lack of Procedures: Furnishers have violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to have a procedure to modify the information in their system.

84. Statutory Mandate: This subsection states that "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of

reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

a. modify that item of information;

b. delete that item of information; or

c. permanently block the reporting of that item of information."

85. Failure to Delete Unverifiable Information: Furnishers failed to delete the items of information which were incomplete, inaccurate and could not be verified.

86. Material Misrepresentation: Furnishers failed to report the current status of the account being "in dispute" which is materially misleading and thus, inaccurate.

87. Causation: Furnishers caused injury in fact including mental and emotional distress, damage to credit reputation, ongoing credit score suppression, denial of credit, and resulting in quantifiable credit damages to Plaintiff.

88. Willful or Negligent Conduct: Furnisher's conduct was negligent and/or willful.

89. Damages Sought: Plaintiff is entitled to recover actual/compensatory damages, statutory damages, punitive damages (if willful) and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

90. Alternatively, Plaintiff is entitled to recover actual damages and costs if the violation is negligent, pursuant to 15 U.S.C. § 1681o.

## COUNT VII: NEGLIGENT SLANDER OF CREDIT

(Florida Common Law Tort - Supplemental Jurisdiction) (Against All Defendants)

91. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

92. Publication of False Information: Defendants Equifax, Navy Federal Credit Union, and Absolute Resolutions negligently published and maintained demonstrably false and misleading information about the Plaintiff's credit accounts to third parties (including MidFlorida Credit Union) and continued to do so after receiving formal notice of the inaccuracy. To prevail on a claim for defamation under Florida law, a plaintiff must satisfy five distinct criteria: "[t]he elements of a claim for defamation are as follows: (1)

publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

93. Assessment of Damages — Special Damages: The publication of the false derogatory information to the lending community constitutes a false statement that directly caused the special damage of the $50,000 credit denial and the resulting loss of the investment opportunity. Plaintiff sustained measurable economic harm: the denial of $50,000 in credit, loss of investment opportunity, and damage to creditworthiness.

94. Failure to Follow Reasonable Procedures: This publication was done as a direct result of failure to follow reasonable procedures and with a degree of disregard for the truth, constituting Slander of Credit under Florida Common Law.

95. Damages Sought: As a direct result of the Defendants' negligence, Plaintiff is entitled to recover compensatory damages for all resulting financial losses,

including the missed investment opportunity, ongoing credit suppression, and damages for emotional distress.

96. *Gross Negligence*: Equifax's conduct demonstrates an extreme and conscious disregard or indifference to the Plaintiff's rights, constituting Gross Negligence under Florida law. The Florida Supreme Court has established a high bar for aggravated misconduct, stating that "[g]ross negligence is the want of even scant care or an extreme departure from the ordinary standard of conduct." *Wackenhut Corp. v. Canty*, 359 So. 2d 430, 436 (Fla. 1978). The CFPB's $15 million enforcement action against Equifax confirms that its conduct rises to the level of gross institutional negligence.

97. Defamatory Publication: The publication and maintenance of the previously deleted, false collection accounts constitutes Slander of Credit under Florida common law.

98. Damages Sought: As a result of this willful and grossly negligent conduct, Plaintiff is entitled to recover compensatory damages and punitive damages under Florida tort law.

## COUNT VIII: GROSS NEGLIGENCE

(Florida Common Law Tort - Supplemental Jurisdiction) (Against Equifax)

99. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

100. Extreme and Conscious Disregard: Defendants' conduct—specifically Equifax's maintenance of two contradictory credit files and active obstruction of the Plaintiff's attempt to re-dispute, and the Furnishers' failure to conduct a documented, substantive investigation—demonstrates an extreme and conscious disregard or indifference to the life, safety, or rights of the Plaintiff. The Florida Supreme Court has established a high bar for aggravated misconduct, stating that "[g]ross negligence is the want of even scant care or an extreme departure from the ordinary standard of conduct." *Wackenhut Corp. v. Canty*, 359 So. 2d 430, 436 (Fla. 1978). The CFPB's January 2025 Consent Order — imposing a $15 million penalty and ordering Equifax to overhaul its entire dispute resolution infrastructure — constitutes independent regulatory confirmation that Equifax's conduct satisfies Florida's gross negligence standard.

101. Assessment of Damages — Continuous and Avoidable Injury: This high degree of negligence directly led to the continuous, known, and avoidable injury to the Plaintiff's credit, justifying an award of punitive damages under Florida law. Equifax knew the information was inaccurate yet consciously maintained it on its proprietary platform and actively prevented Plaintiff from disputing it.

102. Damages Sought: This extreme conduct constitutes Gross Negligence under Florida law, entitling Plaintiff to recover compensatory damages and punitive damages designed to punish and deter such egregious conduct.

## COUNT IX: WILLFUL VIOLATION OF THE FCRA

(15 U.S.C. §§ 1681e(b) & 1681i) (Against Equifax)

103. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

104. Willful Conduct Standard: Equifax acted with reckless disregard or intentional wrongdoing concerning its duties, constituting a willful violation of the FCRA. Under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007),

willfulness includes "knowing or reckless disregard" of statutory obligations. The CFPB's January 17, 2025 Consent Order (File No. 2025-CFPB-0002), issued just weeks before Plaintiff's credit denial, establishes as a matter of regulatory record that Equifax's systemic failures were known, ongoing, and institutional in nature — satisfying the willfulness standard for maximum statutory and punitive damages under 15 U.S.C. § 1681n.

105. Assessment of Damages — Intentional Obstruction: Equifax's intentional obstruction of the dispute process, coupled with the systemic failure to maintain only one accurate file, demonstrates a conscious indifference to the Plaintiff's statutory rights, which resulted directly in the Plaintiff's emotional suffering and economic losses, including the denial of $50,000 in credit and loss of investment opportunity.

106. Evidence of Willful Violation: Equifax's willful violation is evidenced by the following:

a. Reckless Maintenance: Equifax knew the accounts were inaccurate (evidenced by the deletion on AnnualCreditReport.com), yet it recklessly allowed the error to persist on its own site. As the Eleventh Circuit held in

Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991), a CRA maintaining internally contradictory records directly violates § 1681e(b). The Eleventh Circuit has explicitly held that the dissemination of inaccurate information to a third party is not a prerequisite for recovering damages under the FCRA, stating that "a consumer's credit report need not be published to a third party in order to entitle the consumer to actual damages." Collins v. Experian Info. Sols., Inc., 775 F.3d 1330, 1335 (11th Cir. 2015). The CFPB Consent Order confirms this was not an isolated error but a systemic institutional pattern.

b. Obstruction of Dispute: Equifax actively prevented the Plaintiff from re-disputing the inaccurate items by removing the online dispute functionality, thereby intentionally obstructing a mandatory FCRA process under 15 U.S.C. § 1681i. The CFPB specifically found that Equifax's online dispute portal was deliberately limited, preventing consumers from fully describing their disputes — regulatory confirmation of willful obstruction.

c. Failure to Notice: The failure to provide any reinvestigation report demonstrates a reckless indifference to the clear notice requirements of 15 U.S.C. § 1681i(a)(6). The CFPB found Equifax sent 250,000 consumers

misleading reinvestigation letters — confirming this failure was not inadvertent but systemic.

107. Statutory Damages: Pursuant to 15 U.S.C. § 1681n, Equifax is liable for statutory damages of $100 to $1,000 for each willful violation, in addition to actual/compensatory damages.

108. Punitive Damages: Due to the willful nature of this non-compliance — confirmed by the CFPB's $15 million enforcement action — Plaintiff is entitled to punitive damages to punish Equifax's egregious conduct and deter similar violations. The Eleventh Circuit established a 4:1 punitive-to-compensatory ratio as constitutionally appropriate in FCRA willful violation cases. *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735 (11th Cir. 2020) (affirming $250,000 compensatory award and reducing $3.3 million punitive award to $1 million as the constitutional benchmark under the Due Process Clause). *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (establishing that single-digit punitive ratios presumptively satisfy due process).

# COUNT X: FCRA: LACK OF PERMISSIBLE PURPOSE

## (Obtaining a Report Under False Pretenses)

(15 U.S.C. §§ 1681b, 1681n, 1681o and 1681q) (Against ABSOLUTE RESOLUTIONS)

109. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

110. *Lack of Permissible Purpose — Failure to Validate Eliminates Lawful Basis for Access*: Absolute Resolutions lacked permissible purpose to access Plaintiff's consumer report under 15 U.S.C. § 1681b(a)(3)(A). The statute requires that a person seeking to obtain a consumer report "intends to use the information in connection with a credit transaction involving the consumer... including... the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A) (emphasis added). The use of the present tense 'intends' establishes that the permissible purpose must exist at the time the report is obtained — a debt collector cannot retroactively justify unauthorized access by claiming a purpose that did not exist when the report was pulled. After Plaintiff served the Cease and Desist letter on November 12, 2025, and demanded debt validation under 15 U.S.C. §

1692g(b), Absolute Resolutions was federally barred from further collection activity until it provided verification. See 15 U.S.C. § 1692g(b) ('If the consumer notifies the debt collector in writing... that the debt... is disputed... the debt collector shall cease collection of the debt... until the debt collector obtains verification of the debt'). Under Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016), "when a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." Here, Absolute Resolutions failed to acquire—or provide—any account-level documentation proving: (1) the debt existed; (2) Plaintiff owed the debt; (3) Absolute Resolutions had legal authority to collect it; or (4) chain of custody from Navy Federal to Absolute Resolutions. Having failed to validate the debt, Absolute Resolutions had no legitimate 'collection of an account' activity permitted under law. Therefore, at the time Absolute Resolutions accessed Plaintiff's consumer report, it lacked the requisite "intent to use the information in connection with... review or collection of an account" required by § 1681b(a)(3)(A). Any access to Plaintiff's consumer information after this point constitutes a willful violation of § 1681b and § 1681q (obtaining consumer report under false pretenses).

111. Obtaining Report Under False Pretenses: By pulling the Plaintiff's private credit information without proper legal authority, the Debt Collector is deemed to have obtained the consumer report under false pretenses and/or knowingly without a permissible purpose, in violation of 15 U.S.C. § 1681q.

112. Concrete Injury — Invasion of Privacy: The Eleventh Circuit in *Levine* held that a plaintiff suing for willful violation of the FCRA under § 1681n is not required to prove actual damages to recover statutory damages, because the plaintiff's allegation of willful noncompliance with the FCRA was itself an injury that § 1681n "clearly recognize[d] as compensable." *Levine v. World Financial Network National Bank*, 437 F.3d 1118, **1123** (11th Cir. 2006).

113. Criminal Violation with Civil Penalties: This violation of 15 U.S.C. § 1681q carries the same heightened penalties (actual, statutory, and punitive damages) as a willful violation of the FCRA.

114. Assessment of Damages — Weaponization of Private Data: The Debt Collector's unauthorized access to the Plaintiff's private consumer report

caused the Plaintiff severe intentional damages and harm through invasion of privacy, harassment, mental anguish and compounded emotional distress. The unauthorized access enabled targeted harassment using Plaintiff's private data, compounding the injury.

115. Damages Sought: This violation is willful, entitling Plaintiff to actual/compensatory damages (including invasion of privacy, mental anguish, and emotional distress), statutory damages ($100 to $1,000 per violation), and punitive damages under 15 U.S.C. §§ 1681n and 1681q.

## COUNT XI: FDCPA: UNFAIR OR UNCONSCIONABLE MEANS

(15 U.S.C. § 1692f) (Against ABSOLUTE RESOLUTIONS) (Debt Collector)

116.   Plaintiff re-alleges and incorporates by reference the preceding

paragraphs.

117.   Unfair Collection Method — Use of Unlawfully Obtained Information:

By pulling the Plaintiff's private credit information without permissible

purpose and using it as part of a collection scheme constitutes "unfair or

unconscionable means to collect or attempt to collect any debt" in violation

of 15 U.S.C. § 1692f. The subsequent harassment, armed with the Plaintiff's

data, proves the unfair nature of their collection method. Under LeBlanc v.

Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010) — binding

Eleventh Circuit authority — conduct that violates the underlying spirit of

the FDCPA may constitute unfair practices under § 1692f.

118.   Assessment of Damages — Unlawful Collection Practices: The Debt

Collector used unfair or unconscionable means to collect a debt by using

information unlawfully obtained, making demands without proper

substantiation, and continuing collection efforts on a disputed debt, causing the Plaintiff to suffer anxiety, stress, and mental anguish.

119. Damages Sought: Pursuant to 15 U.S.C. § 1692k, the Debt Collector is liable for actual/compensatory damages (including emotional distress, anxiety, and mental anguish) and statutory damages (up to $1,000).

## COUNT XII: FDCPA: THREATENING ILLEGAL ACTION

(15 U.S.C. § 1692e(5)) (Against ABSOLUTE RESOLUTIONS) (Against Debt Collector)

120. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

121. Threatening Action That Cannot Be Taken: By demanding payment for tens of thousands of dollars while implicitly threatening action which they cannot legally take — e.g., threatening further actions or enforce any penalty when they know they lack the necessary chain of custody and other documentation to legally pursue or win a case — constitutes a separate,

clear-cut violation of making an illegal threat in violation of 15 U.S.C. § 1692e(5).

122.   Violation of 15 U.S.C. § 1692e(5): The Debt Collector violated 15 U.S.C. § 1692e(5) by threatening to take legal action or other punitive measures that could not legally be taken because they lacked the necessary verification and documentation to pursue litigation. Under Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985) — binding Eleventh Circuit authority — threatening action that cannot legally be taken violates § 1692e(5).

123.   Assessment of Damages — Fear and Anxiety from Illegal Threats: The threat of illegal action caused the Plaintiff to suffer severe fear, anxiety, and distress, constituting actual emotional harm.

124.   Damages Sought: Pursuant to 15 U.S.C. § 1692k, the Debt Collector is liable for actual/compensatory damages (including fear, anxiety, and emotional distress) and statutory damages (up to $1,000).

## COUNT XIII: FCCPA (FLORIDA): MISREPRESENTING A DEBT

(Fla. Stat. § 559.72(9)) (Against ABSOLUTE RESOLUTIONS) (Debt Collector)

125.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

126.  Misrepresentation of Legal Status: The Debt Collector violated Florida Statute § 559.72(9) by demanding payment and attempting to collect debt without permissible purpose and knowing they cannot prove they own the debt. Florida Statute § 559.72(9) prohibits "[f]alsely representing the character, extent, or amount of a consumer debt, or falsely representing the debt's status in any legal proceeding."

127.  Failure to Verify Debt Ownership: Debt Collector has failed to legally verify the legal status, ownership, or amount, thereby misrepresenting the debt.

128.  Misrepresentation of Legal Status: The debt collector is arguably misrepresenting the legal status of the debt, a direct violation of the FCCPA.

129. Assessment of Damages — Florida-Specific Emotional Injury: This violation of Florida law caused independent emotional injury and stress by subjecting the Plaintiff to collection efforts that lacked legal validity within the state of Florida.

130. Damages Sought: The Debt Collector is liable for actual/compensatory damages (emotional injury and stress from invalid collection attempts), statutory damages (up to $1,000 under Fla. Stat. § 559.77), and potentially punitive damages under Florida law pursuant to Fla. Stat. § 559.77(2).

## COUNT XIV: TCPA — WILLFUL NON-COMPLIANCE

(47 U.S.C. § 227) (Against ABSOLUTE RESOLUTIONS) (Debt Collector)

131. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

132. TCPA Violation — Use of ATDS After Revocation of Consent: Absolute Resolutions violated the TCPA (47 U.S.C. § 227) by using an automated system to harass Plaintiff with a lack of a permissible purpose after consent was revoked. Under Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372

(2012), federal district courts have subject-matter jurisdiction over TCPA claims.

133. Statutory Standing: Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3). Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6), whose principal business purpose is the collection of debts using instrumentalities of interstate commerce.

134. The Legal Mandate — Cease and Desist Creates Federal Bar: Around November 12, 2025, Plaintiff served Defendant with a Written Cease and Desist Notice. Under 15 U.S.C. § 1692c(c), this notice creates an absolute federal bar against further communication. Additionally, this notice revoked any prior express consent for automated calls under 47 U.S.C. § 227(b)(1).

135. Willful Non-Compliance (FDCPA and TCPA): Despite this bar, Defendant initiated [47] unauthorized communications. Each instance constitutes a violation of 15 U.S.C. § 1692c(c) and 15 U.S.C. § 1692d, as Defendant's conduct was intended to harass, oppress, and abuse the Plaintiff.

136.  Per-Incident Penalties (TCPA): Upon information and belief, Absolute Resolutions willfully violated the TCPA by initiating unauthorized communications via an Automated Telephone Dialing System (ATDS) or an artificial/prerecorded voice to contact Plaintiff's cellular telephone. Under 47 U.S.C. § 227(b)(1), each such call made after the revocation of consent is a separate violation.

137.  Separate Violations and Treble Damages: Under Drazen v. Pinto, 74 F.4th 1336, 1342 (11th Cir. 2023) — binding Eleventh Circuit authority — each unauthorized call after express revocation of consent constitutes a separate violation entitling Plaintiff to statutory damages, and TCPA violations support claims for invasion of privacy and emotional distress as concrete injuries. At $1,500 per willful call (treble damages under 47 U.S.C. § 227(b)(3)), each unauthorized communication results in a separate per-call statutory penalty.

138.  Treble Damages for Willful Conduct: Because Defendant acted with actual knowledge of the Cease and Desist, Plaintiff is entitled to treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3). With [47] documented unauthorized communications, total TCPA statutory damages

are no less than **$70,500.00** — each amount representing a separate, independent violation.

139. Florida State Violations (FCCPA): Defendant's conduct simultaneously violates Fla. Stat. § 559.72(7) (simulating legal process) and (18) (other conduct violating FDCPA), allowing separate state statutory damages under Fla. Stat. § 559.77.

140. Assessment of Cumulative Statutory Damages: $1,000 (FDCPA base under 15 U.S.C. § 1692k) + $1,000 (FCCPA base under Fla. Stat. § 559.77) + **$70,500**. (TCPA: 47 calls × $1,500 treble) = **$70,500.** minimum in statutory damages from Count XIV alone.

141. Actual Damages: Severe emotional distress, out-of-pocket costs, invasion of privacy, harassment-related anxiety, and mental anguish, supported by the 11th Circuit's ruling in Drazen v. Pinto, 74 F.4th 1336, 1342 (11th Cir. 2023).

142. Punitive Damages: Justified under Fla. Stat. § 559.77(2) to punish the Defendant's egregious and willful disregard for federal and state law.

143. WHEREFORE, Plaintiff demands judgment against Defendant for all statutory, actual, and punitive damages, pre-judgment interest, and attorney's fees.

## COUNT XV: WILLFUL VIOLATION OF THE FCRA (15 U.S.C. § 1681b) AND COMMON LAW INTRUSION UPON SECLUSION

(Against ABSOLUTE RESOLUTIONS) (Debt Collector)

### 1. JURISDICTION AND ARTICLE III STANDING

144. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

145. Subject Matter Jurisdiction: This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

146. Article III Standing — Concrete Injury: Plaintiff has Article III standing because Defendant's unauthorized acquisition of Plaintiff's private consumer data constitutes a "concrete injury" in the form of an invasion of privacy. The U.S. Supreme Court has clarified the threshold for Article III standing,

stating that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

147.   Case Citation: The Eleventh Circuit in *Levine* held that a plaintiff suing for willful violation of the FCRA under § 1681n is not required to prove actual damages to recover statutory damages, because the plaintiff's allegation of willful noncompliance with the FCRA was itself an injury that § 1681n "clearly recognize[d] as compensable." *Levine v. World Financial Network National Bank*, 437 F.3d 1118, **1123** (11th Cir. 2006).

## 2. PARTIES

148.   Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

149.   Defendant is a "person" and a "user of consumer reports" as defined by 15 U.S.C. § 1681a(b).

## 3. STATEMENT OF CLAIM: LACK OF PERMISSIBLE PURPOSE

150.   *Termination of Permissible Purpose*: Around November 12, 2025, Plaintiff terminated any potential "business need" or "permissible purpose" the Defendant may have had by serving a formal Written Cease and Desist and debt validation demand. Under 15 U.S.C. § 1681b(a)(3)(A), permissible purpose requires a person to 'intend to use the information in connection with a credit transaction involving the consumer... including... review or collection of an account.' **The use of the present tense 'intends' establishes that the permissible purpose must exist at the time the report is obtained.** Once Plaintiff revoked consent and demanded validation under § 1692g(b), Defendant was federally barred from collection activity until providing verification. Having failed to validate the debt (as detailed in Count X, supra), Defendant lacked any legitimate 'intent' to use the information for lawful collection purposes. Therefore, with lack of permissible purpose, any access to Plaintiff's consumer report from Defendant's earliest attempt (**'intent'**) up until November 12, 2025 and current, is in direct violation of 15 U.S.C. § 1681b(a)(3)(A), **"permissible purpose must exist at the time the report is obtained"** and 15 U.S.C. § 1681b.

151. Willful Unauthorized Use: Despite this termination, Defendant willfully utilized Plaintiff's private consumer information or utilized non-public skip-tracing data in violation of 15 U.S.C. § 1681b(f) to misuse as a form of supportive evidence and/or authority to harass the plaintiff and collect debt.

152. Additional Authority on Permissible Purpose: The Eleventh Circuit has established that a consumer reporting agency's or furnisher's continued publication of disputed inaccurate information to third parties constitutes a per se injury under the FCRA, holding that "the false reporting itself [i]s the injury" and that "repeatedly report[ing] a non-existent delinquent . . . debt on [the plaintiff's] credit report to third parties" is a cognizable Article III injury requiring no further proof of harm. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943–44 (11th Cir. 2021). Defendant Absolute Resolutions' continued use of Plaintiff's private consumer information and continued collection activity following the Cease and Desist notice therefore constitutes an ongoing, compounding injury to Plaintiff's privacy rights and creditworthiness.. Furthermore, under Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016), the Eleventh Circuit established that a debt collector who proceeds with collection activity without adequately

verifying the debt or maintaining proper documentation acts without sufficient legal basis, reinforcing Absolute Resolutions' lack of permissible purpose.

## 4. STATEMENT OF CLAIM: TORTIOUS INVASION OF PRIVACY

153.  Florida Common Law Tort — Intrusion Upon Seclusion: Defendant's use of this illegally obtained information to initiate contact via text/phone/voicemail constitutes the Florida common law tort of Intrusion upon Seclusion. The Eleventh Circuit has made it clear that a consumer does not need to show a physical injury to have standing, as "wasted time is a concrete harm" sufficient to maintain a claim in federal court. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021).

154.  Highly Offensive Conduct: The intrusion was intentional and would be highly offensive to a reasonable person, as it was committed after the Defendant was explicitly told to cease all communications.

## 5. WILLFULNESS AND NEGLIGENCE

155.  Willful Violation: Defendant's conduct was not a "clerical error." It was a willful violation of 15 U.S.C. § 1681n, as Defendant knew it lacked a permissible purpose yet proceeded to mine Plaintiff's data to facilitate harassment. Under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), willfulness includes knowing or reckless disregard of statutory duties.

156.  Deceptive Means: Defendant further violated 15 U.S.C. § 1692e(10) by using deceptive means (unauthorized data access) to attempt to collect a debt.

## 6. PRAYER FOR RELIEF (Itemized Damages for Evaluation)

157.  Plaintiff demands the following:

158.  Statutory Damages (FCRA): $1,000.00 for the willful unauthorized access under 15 U.S.C. § 1681n(a)(1)(A).

159.  Statutory Damages (FDCPA): $1,000.00 for the use of deceptive means under 15 U.S.C. § 1692k.

160.  Actual Damages: Compensation for the "mental anguish" and "loss of privacy" caused by the weaponization of Plaintiff's private data, including anxiety, emotional distress, harassment-related trauma, and invasion of privacy.

161.  Punitive Damages: Since Defendant's actions were willful and malicious, Plaintiff seeks punitive damages to deter such predatory practices in the State of Florida.

162.  Double Violation Distinction: Considered a "Double Violation." There is legally a Distinction between Count XIV and Count XV.

163.  The Pull: The act of taking the info without a "permissible purpose" (FCRA violation under 15 U.S.C. § 1681b).

164.  The Push: The act of using that info to harass the Plaintiff with ill and willful intent (FDCPA/TCPA violations). Knowing the legal violations but

proceeding to perform these egregious violations with full disregard for the law and willful neglect of the damages caused!

## COUNT XVI: VIOLATION OF THE FAIR CREDIT REPORTING ACT

(15 U.S.C. § 1681 et seq.) (Against EQUIFAX INFORMATION SERVICES, LLC, and NAVY FEDERAL CREDIT UNION, Defendants.)

165. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

166. Failure to Follow Reasonable Procedures and Failure to Report Account as Disputed.

167. Defendants' Statutory Roles: At all times relevant, Defendant Equifax was a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), and Defendant Navy Federal was a "furnisher" of information under 15 U.S.C. § 1681s-2.

168. Proper Dispute: Plaintiff timely and properly disputed the accuracy of Accounts with Defendant Equifax, asserting that the debt was inaccurate and incomplete, in compliance with 15 U.S.C. § 1681i(a)(1).

169. Notice to Furnisher: Pursuant to 15 U.S.C. § 1681i(a)(2), Defendant Equifax provided notice of the dispute to Defendant Navy Federal via the e-OSCAR system.

170. Failure to Investigate and Report Dispute Status: Despite having actual and constructive notice of the dispute, Defendant Navy Federal failed to follow reasonable procedures and conduct a reasonable investigation and failed to report the account as "disputed" to the CRAs, in violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (D). The Eleventh Circuit held in Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016) — binding authority directly on point — that a furnisher's investigation is only reasonable if it includes a review of all relevant information forwarded by the CRA, including consumer-submitted documentation. For additional persuasive authority, Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) established that the FCRA's reinvestigation requirement demands

careful evaluation of all consumer-provided documentation to ensure maximum possible accuracy.

171. CRA's Continuing Duty: Defendant Equifax, despite receiving notice of the dispute and having a continuing duty to assure maximum possible accuracy under 15 U.S.C. § 1681e(b), published consumer reports to third-party lenders that omitted the "disputed" status of the account. The CFPB's January 2025 Consent Order confirms this conduct as an institutionalized FCRA violation.

172. EPICENTER — FAILURE TO FOLLOW REASONABLE PROCEDURES: The primary and epicenter of this claim is that Defendants failed to maintain or follow reasonable procedures designed to ensure that a consumer's dispute is affirmatively and clearly noted on the consumer report. The omission of the "disputed" status rendered the credit report materially misleading to potential creditors. The Eleventh Circuit held in Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313 (11th Cir. 2018) — binding authority directly applicable to this Court — that a furnisher's failure to note a consumer's dispute constitutes an independent FCRA violation because it creates a materially misleading impression for prospective creditors.

173.  Assessment of Damages: As a direct and proximate result of Defendants' failure to follow reasonable procedures, Plaintiff has suffered Actual/Compensatory Damages, including but not limited to:

174.  Denial of Credit: Specifically, $50,000 Credit Loan from Mid Florida Credit Union, representing quantifiable pecuniary loss.

175.  Increased Borrowing Costs: Higher interest rates offered due to the misleading negative tradeline, resulting in measurable economic harm.

176.  Emotional Distress and Reputational Harm: Frustration, anxiety, and damage to reputation (libel/slander per se) resulting from the persistent inaccurate reporting.

177.  Willful Conduct: Defendants' actions were willful under 15 U.S.C. § 1681n, as they were aware of their statutory obligations yet recklessly disregarded the mandate to report the dispute, entitling Plaintiff to statutory and punitive damages. Under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), willfulness includes reckless disregard of known statutory duties.

## COUNT XVII: VIOLATION OF THE FTSA

(Violation of Fla. Stat. § 501.059(8)(a) (Against ABSOLUTE RESOLUTIONS)

(Debt Collector)

178. Plaintiff re-alleges and incorporates by reference the proceeding paragraphs.

179. The FTSA prohibits a person from "making or knowingly allowed unsolicited telephonic sales calls if such call involves an automated system for the selection or dialing of telephone numbers, without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

180. Defendant made or knowingly allowed unsolicited telephonic sales calls to Plaintiff using an automated system for the selection and dialing of telephone numbers.

181. Defendant's calls to Plaintiff constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(8)(a)(1)(j).

182. Plaintiff received Defendant's automated calls while located in Florida.

183. Defendant did not have "prior express written consent" to make unsolicited telephonic sales calls to Plaintiff using an automated system for the selection or dialing of telephone numbers, as required by Section 501.059(8)(a).

184. Thus, Defendant's telephone calls to Plaintiff violated Section 501.059(8)(a) of the FTSA.

185. Plaintiff suffered harm and emotional distress by Defendant's violations of the FTSA.

186. Plaintiff is entitled to an injunction against Defendant's ongoing and future violations of the FTSA. See Fla. Stat. § 501.059(10)(a)(1).

187. Plaintiff is entitled to an award of liquidated damages of $500.00 for each call that Defendant made in violation of the FTSA. See Fla. Stat. § 501.059(10)(a)(2).

188. Because Defendant knew or should have known that it was using an automated system for the selection and dialing of telephone numbers to make telephone calls to Plaintiff without prior express written consent, Defendant's violations of the FTSA were willful or knowingly.

189. As a direct result, of egregious damages caused by the Defendant's willful and neglectful actions. Plaintiff is justifiably entitled to an award of treble statutory damages under the TCPA in the amount of $1,500.00 for each call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

## COUNT XVIII: VIOLATION OF THE NATIONAL DO NOT CALL REGISTRY

(Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)) (Against ABSOLUTE RESOLUTIONS) (Debt Collector)

190. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

191. The TCPA and its implementing regulations prohibit any person or entity from initiating any telephone solicitation to a residential telephone

subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

192. Plaintiff is a "residential telephone subscriber" as defined by the TCPA, and Plaintiff's cellular telephone number was registered on the National Do Not Call Registry for more than 31 days prior to the first unauthorized communication initiated by the Defendant.

193. Defendant initiated more than one telephone solicitation to Plaintiff within a 12-month period while Plaintiff's number was on the National Do Not Call Registry.

194. Defendant's calls to Plaintiff constitute "telephone solicitations" because they were initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, or for the purpose of collecting alleged consumer debts. 47 C.F.R. § 64.1200(f)(15).

195. Plaintiff did not provide "prior express invitation or permission" to Defendant, nor did Plaintiff have an "established business relationship" with Defendant that would exempt these calls from the National DNC Registry protections.

196. Thus, Defendant's telephone calls to Plaintiff violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

197. Plaintiff suffered harm, including invasion of privacy, nuisance, and emotional distress, by Defendant's violations of the National DNC Registry.

198. Plaintiff is entitled to an injunction against Defendant's ongoing and future violations of the National DNC Registry. See 47 U.S.C. § 227(c)(5)(A).

199. Plaintiff is entitled to an award of statutory damages of $500.00 for each call that Defendant made in violation of the National DNC Registry. See 47 U.S.C. § 227(c)(5)(B).

200. Because Defendant knew or should have known that Plaintiff's number was registered on the National Do Not Call Registry, Defendant's violations were willful and knowing.

201. As a direct result of the egregious damages caused by the Defendant's willful and neglectful actions, Plaintiff is justifiably entitled to an award of treble statutory damages in the amount of $1,500.00 for each call that Defendant placed in knowing or willful violation of the National DNC Registry. 47 U.S.C. § 227(c)(5).

## VI. DEMAND FOR RELIEF

202.  WHEREFORE, Plaintiff, STEVEN FLETCHER, demands judgment against Defendants EQUIFAX INFORMATION SERVICES, LLC, NAVY FEDERAL CREDIT UNION, and ABSOLUTE RESOLUTIONS, jointly and severally. Plaintiff sets forth the following structured "Damages Tower" — a three-tiered calculation grounded in statute and 11th Circuit precedent — establishing that the total targeted relief of no less than $2,500,000.00 is constitutionally sound, mathematically derived, and practically reachable.

203.  **TIER 1 — THE ANCHOR: ACTUAL/COMPENSATORY DAMAGES (Economic + Non-Economic):**

A. Economic Damages — $50,000.00: The direct, provable economic loss from the denial of the $50,000 line of credit from MidFlorida Credit Union. In real estate and business litigation, this credit denial carries a "velocity of money" value — the loss prevented Plaintiff from generating investment returns during a period of high market appreciation, meaning the true economic damage exceeds the face denial amount.

B. Non-Economic Compensatory Damages — $500,000.00: Plaintiff has documented physical manifestations of emotional distress — including chronic back pain exacerbation, migraines, banding headaches, chest aches, panic attacks, insomnia, and damaged personal relationships — which under Eleventh Circuit precedent constitute non-economic compensatory damages independent of and in addition to economic loss. Physical manifestations of emotional distress elevate the non-economic value from a "nuisance" claim to a "substantial injury" claim in the Middle District of Florida.

C. Total Tier 1 (Compensatory Floor): $550,000.00

204. **TIER 2 — THE MULTIPLIER: PUNITIVE DAMAGES (4:1 Ratio — 11th Circuit Standard):**

The Eleventh Circuit established a 4:1 punitive-to-compensatory ratio as constitutionally appropriate in FCRA willful violation cases. *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735 (11th Cir. 2020) (affirming $250,000 compensatory award and reducing $3.3 million punitive

award to $1 million as the constitutional benchmark under the Due Process Clause). *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (establishing that single-digit punitive ratios presumptively satisfy due process). The Supreme Court has established that punitive damages within a single-digit ratio to compensatory damages are presumptively constitutional. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003). Equifax is a billion-dollar corporation. A 4:1 punitive multiplier — applied to the $550,000 compensatory anchor — yields a targeted punitive award of $2,200,000.00. This figure is not arbitrary; it is the minimum punitive exposure constitutionally supported for a large corporate defendant whose willful FCRA violations were confirmed by the CFPB's January 17, 2025 Consent Order (File No. 2025-CFPB-0002) — imposing a $15 million institutional penalty for the same categories of conduct Equifax committed against Plaintiff. Defendants' willfulness, systemic nature of violations, and large corporate size all support the upper range of the single-digit punitive ratio.

D. Targeted Punitive Damages — $1,800,000.00: Even if a jury conservatively awards $450,000 in compensatory damages, a 4:1 multiplier produces $1,800,000 in punitive damages — an amount proportionate to

Equifax's institutional scale and designed to achieve the punitive function of deterrence. Punitive damages are not for the Plaintiff — they are to punish the Defendant and deter future misconduct by a corporation that processes 765,000 consumer disputes per month.

E. Total Tier 2 (Punitive Floor): $1,800,000.00

## 205.   TIER 3 — THE AGGREGATOR: STATUTORY DAMAGES (Per-Violation, No Harm Required):

F. TCPA Statutory Damages — **$70,500.00** minimum: Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff is entitled to $1,500 per willful call after the Cease and Desist (treble damages). With [47] documented unauthorized communications: $47 \times \$1,500 = \$70,500$. Each call is a separate, independent violation. Under Drazen v. Pinto, 74 F.4th 1336, 1342 (11th Cir. 2023), statutory damages are awarded without requiring additional proof of harm.

G. FTSA Statutory Damages — **$70,500.00** minimum: Pursuant to **Fla. Stat. § 501.059(10)(b)**, Plaintiff is entitled to liquidated damages in the amount of

$1,500 per willful and knowing telephonic sales call or text message (treble damages). With **[47]** documented unauthorized communications occurring after the Plaintiff's express revocation of consent: **47 × $1,500 = $70,500.00**. Each communication constitutes a separate and independent violation of the Florida Telephone Solicitation Act. Consistent with the Eleventh Circuit's holding in ***Drazen v. Pinto***, 74 F.4th 1336, 1342 (11th Cir. 2023), these statutory damages are recoverable as a matter of law for the concrete injury, nuisance, and invasion of privacy caused by the unauthorized solicitations, without requiring additional proof of actual monetary loss.

H. National DNC Registry Statutory Damages — **$70,500.00 minimum:** Pursuant to **47 U.S.C. § 227(c)(5)** and **47 C.F.R. § 64.1200(c)**, Plaintiff is entitled to up to $1,500 per willful violation of the National Do Not Call Registry protections (treble damages). As a registered member of the National DNC Registry for more than 31 days prior to the first violation, Plaintiff received **[47]** unauthorized telephonic solicitations from the Defendant(s) within a 12-month period: **47 × $1,500 = $70,500.00**. These communications were made in direct defiance of the Plaintiff's privacy rights and the federal regulations governing the Registry. Pursuant to the 11th Circuit's ruling in ***Drazen v. Pinto***, 74 F.4th 1336, 1342 (11th Cir.

2023), each unauthorized communication represents a concrete, intangible injury in the form of an "intrusion upon seclusion," warranting the full award of statutory damages without further proof of out-of-pocket loss.

I. FCRA Statutory Damages — $1,000 per willful violation per Defendant (15 U.S.C. § 1681n).

J. FDCPA Statutory Damages — Up to $1,000 per action (15 U.S.C. § 1692k). Strict liability — no proof of harm required.

K. FCCPA Statutory Damages — Up to $1,000 per violation (Fla. Stat. § 559.77). Separate and independent from FDCPA.

L. Total Tier 3 (Statutory Floor): $150,000.00+

**206.  THE FINAL SUMMATION — TOTAL TARGETED RELIEF:**

| | |
|---|---|
| Compensatory Floor (Tier 1): | $550,000.00 |
| Punitive Floor — 4:1 Williams Ratio (Tier 2): | $1,800,000.00 |
| Statutory Aggregator (Tier 3): | $150,000.00 |
| TOTAL TARGETED RELIEF: | $2,500,000.00 |

M. Total Targeted Relief: An award of no less than $2,500,000.00 inclusive of all compensatory, punitive, and statutory damages. This figure represents the constitutionally anchored, mathematically derived, and practically reachable total demand — placing Defendants in the position where a $250,000 to $500,000 settlement represents a fraction of their exposure.

N. Injunctive Relief: An Order from this Court compelling Equifax to immediately and permanently delete the inaccurate closed accounts from all of Plaintiff's credit files across all platforms and databases maintained by Equifax — including both AnnualCreditReport.com and any proprietary internal databases — consistent with the CFPB's Consent Order requiring Equifax to overhaul its dispute resolution processes.

O. Waiver of Debt Balance: Written confirmation that the alleged debt is zeroed out and the tradeline permanently deleted with prejudice.

P. Litigation Costs: An award of the costs of this action, including all fees and expenses pursuant to 15 U.S.C. § 1681o(a)(2), 15 U.S.C. § 1692k(a)(3), 47 U.S.C. § 227(b)(3), and Fla. Stat. § 559.77(2).

Q Legal Fees: Awarding Plaintiff reasonable fees and expenses. As a pro se litigant, Plaintiff is entitled to recover litigation costs upon prevailing under each of the above fee-shifting statutes.

R. Pre-Judgment Interest: On all liquidated damages from the date of the first violation.

S. Further Relief: Awarding Plaintiff such other and further relief as the

Court may deem just, equitable, and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

207.  Plaintiff hereby demands a trial by jury on all issues so triable.

208.  Respectfully Submitted,

Date:          April 03, 2026              By: _____

**STEVEN FLETCHER, (Pro Se)**
505 Walnut Street,
Auburndale, FL 33823
Telephone: (228) 260-2007
Email: cc.steventfletcher@gmail.com